# Third District Court of Appeal

## State of Florida

Opinion filed July 23, 2014.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D13-2968
Lower Tribunal No. 9-65726
_____


**Walter Pineda and Eider Pineda,**
Appellants,

vs.

**Wells Fargo Bank, N.A.,**
Appellee.


An Appeal from the Circuit Court for Miami-Dade County, Diane V. Ward, Judge.

Michael Farrar, for appellants.

Lawrence J. Shapiro & Associates, P.A., and Lawrence J. Shapiro and Phillip W. Yates, for appellee.


Before SUAREZ, EMAS and SCALES, JJ.

SCALES, J.

Appellants, Walter and Eider Pineda (the Pinedas), Cross-defendants below, appeal from the trial court's November 19, 2013, order, which: (1) granted third-party purchaser Nocari Investment, LLC.'s (Nocari) motion to disburse surplus funds to Nocari, and (2) denied the Pinedas' motion to disburse those funds to themselves. In this cautionary tale to bidders at foreclosure sales, we reverse and remand with directions that the improperly disbursed surplus funds be re-deposited into the court registry.

## I.    Background

Wells Fargo Bank, N.A. (Wells Fargo) filed a foreclosure action against the Pinedas to foreclose its senior mortgage on the Pinedas' home. In addition to the Wells Fargo mortgage, the Pinedas' home was encumbered by a subordinate mortgage in which Florida Bankers Realty, LLC (FBRL) was the mortgagee.

Along with the Pinedas, FBRL was named as a defendant in the Wells Fargo foreclosure action, and FBRL filed a cross-claim against the Pinedas, seeking to foreclose FBRL's subordinate mortgage.

Prior to Wells Fargo completing their foreclosure action on their senior mortgage, FBRL sought a final judgment of foreclosure on their subordinate mortgage; the trial court entered judgment for FBRL in the amount of $76,611.28 and set a foreclosure sale date.

2

In the February 11, 2013, amended summary judgment of foreclosure, Paragraph nine called for distribution of foreclosure sale proceeds as follows:

> [T]he Clerk shall distribute the proceeds of the sale, so far as they are sufficient, by paying: First of all the CROSS PLAINTIFF'S costs; second, documentary stamps affixed to the Certificate; third, CROSS PLAINTIFF'S attorney fees; fourth, the total sum due to the CROSS PLAINTIFF, less the items paid, plus interest . . . . During the sixty (60) days after the Clerk issues the Certificate of disbursements, the Clerk shall hold the surplus pending further Order of this Court.

On March 27, 2013, the property was sold, obviously subject to Wells Fargo's superior mortgage, to Nocari for a purchase price in excess of $184,000. After satisfying FBRL's judgment, a surplus of approximately $99,500 remained in the court registry. Nocari thereafter filed a motion with the trial court, seeking an order for disbursement of the surplus funds.

In its motion, Nocari sought to have the clerk release the surplus funds to Wells Fargo on the condition that Wells Fargo apply the released funds to Wells Fargo's mortgage loan balance. Alternatively, Nocari sought an order allowing it to receive the surplus funds to use toward satisfaction of Wells Fargo's mortgage. Nocari argued the Pinedas should not be unjustly enriched by recouping the surplus funds and then not paying Wells Fargo, especially in light of the fact the Pinedas had filed for bankruptcy and received a discharge of their debt owed to Wells Fargo.

3

The Pinedas opposed Nocari's motion, arguing third-party purchasers such as Nocari are not entitled to control or direct surplus funds; the Pinedas also moved for an order disbursing the funds to themselves. The Pinedas contended they had priority in the distribution of the surplus funds pursuant to section 45.032(2), Florida Statutes (2013). Section 45.032(2) reads, in relevant part, "There is established a rebuttable legal presumption that the owner of record on the date of the filing of a lis pendens is the person entitled to surplus funds after payment of subordinate lienholders who have timely filed a claim."

Wells Fargo responded to Nocari's motion to disburse surplus funds, contending Nocari is a non-interested third party with whom Wells Fargo has no privity and against whom Wells Fargo should not be forced to mitigate its damages.

On November 5, 2013, the trial court held a hearing on Nocari's and the Pineda's motions to disburse the surplus funds. The trial court queried whether "Nocari knew when they purchased [the property] that they were just buying the interest of [FBRL], not the entire house or property[.]" Nocari's counsel responded:

> Well, they recognized they were bidding on the foreclosure judgment or property encumbered by these liens and one of them is in favor of [Wells Fargo]. Candidly[,] what Nocari was expecting was that all liens that would be proper[l]y attached to the property to the extent they were subject of surplus proceeds would be satisfied. . . . So Nocari approached this expecting that 99-odd thousand or whatever

4

the surplus would be would then in turn be applied to the first mortgage they know they gotta make up the difference, they don't get a discount.

Nocari also argued that, if awarded the surplus, the Pinedas would receive a "windfall" because any debt they owed Wells Fargo had been discharged by the Pinedas' bankruptcy. Although Nocari conceded there was "no law" to support its position that the Pinedas should not receive the surplus, it nonetheless contended the Pinedas should not receive the surplus since they "clearly never paid and will not now pay because they are legally discharged and are divested of ownership of the property."

The Pinedas argued they would not incur a windfall because Nocari knew it was purchasing the property subject to Wells Fargo's mortgage. They further contended there was no statutory or case law supporting Nocari's position.

The trial court initially agreed with the Pinedas, stating, "It sounds . . . to me [like] you [Nocari] don't have any law on your side," but then found,

It just seems to me that the only equitable resolution would be for the surplus to be released to Nocari for use to satisfy the mortgage. Otherwise it would be a windfall to the Pinedas who have done nothing to defend and they've been defaulted. So as an equitable resolution and finding that's what I'll do.

The trial court entered the Order on appeal granting Nocari's motion to disburse surplus funds and denying the Pinedas' motion to disburse funds. The Order directed the clerk to release the funds directly to Nocari, adding that the

5

"surplus proceeds shall be applied to and used towards pay-off of the existing first mortgage held by [Wells Fargo]." This appeal followed.

## II. Analysis

The issue in this case is whether the trial court erred in entering an order disbursing the surplus proceeds from a foreclosure sale to the buyer so that the buyer would use the proceeds to reduce the amount due on a superior lien. Because the issue before this court is purely a question of law, our review is de novo. See Armstrong v. Harris, 773 So. 2d 7, 11 (Fla. 2000).

Section 45.032(2) of the Florida Statutes creates a rebuttable presumption that the owner of record receives all "surplus funds after payment of subordinate lienholders who have timely filed a claim." Section 45.032(1)(a), Florida Statutes (2013), defines the "owner of record" as the person who appears to be the owner of the property "that is the subject of the foreclosure proceeding on the date of the filing of the lis pendens." While the statutory presumption is "rebuttable," section 45.032(2) expressly delineates the circumstances under which the presumption may be rebutted, i.e., where the owner has assigned such surplus funds rights to an assignee pursuant to section 45.033(2)(a), Florida Statutes (2013), a situation which does not appear to exist in this case.[1]

_____

[1] Obviously, however, on remand, Nocari is not foreclosed from attempting to establish a statutory entitlement to the surplus if it can meet the applicable requirements of section 45.032.

Nocari has cited no case supporting its position that it is entitled to the surplus, stating instead that the case law upon which it relies "is silent with respect to the release to a third[-]party purchaser simply acting as a channel to ultimately deliver the funds to a valid lienholder."

Nocari contends that when it purchased the subject property, it assumed the liability for Wells Fargo's senior mortgage, and therefore is entitled to disbursement of the surplus to pay off the senior mortgage, at least in part. Nocari urges us to conclude that, because its intention was to pass the surplus to Wells Fargo, Nocari itself would not be "participating" in the surplus.

While we are sympathetic to Nocari's equitable argument, the fact remains that distribution of surplus foreclosure proceeds is governed by a plain and unambiguous statutory procedure which clearly provides that the owner of record is entitled to the surplus proceeds. Where the legislature has provided such a process, courts are not free to deviate from that process absent express authority. See State v. DiGuilio, 491 So. 2d 1129, 1133 (Fla. 1986) ("Our responsibility as an appellate court is to apply the law as the Legislature has so clearly announced it. We are not endowed with the privilege of doing otherwise regardless of the view which we might have as individuals.") (citation omitted); DTRS Intercontinental Miami, LLC v. A.K. Gift Shop, Inc., 77 So. 3d 785, 787 (Fla. 3d DCA 2011)

("The law is the law. It is not our job to carve exceptions into an otherwise clear and imperative statute.") (citation omitted).

Neither the statutes nor the case law governing distribution of surplus foreclosure sale proceeds provides a mechanism authorizing a third-party purchaser to obtain the surplus. The statute is clear: the owner of record at the time of the recording of the lis pendens is entitled to any surplus proceeds. See § 45.032(1)(a), Fla. Stat. The Notice of Lis Pendens,[2] recorded September 9, 2009, reflects the Pinedas owned the subject property. Nocari was neither an "owner of record," an assignee of an owner, nor "subordinate lienholder," see §§ 45.032(1)(a), (b); § 45.033(2), Fla. Stat., and thus was not entitled to any surplus funds. See Rosen v. Dorn-Kothe, Inc., 171 So. 646, 648 (Fla. 1936) ("It appears to be settled beyond all question that one claiming a surplus or the right to share in a surplus resulting from a sale under foreclosure must either own the equity of redemption at the time of the sale or must be one then holding a lien or vested right in the property."); Jelic v. Sears Mortgage Corp., 614 So. 2d 1149, 1150 (Fla. 4th DCA 1993); see also Garcia v. Stewart, 906 So. 2d 1117, 1120-21 (Fla. 4th DCA 2005).

Again, while we sympathize that Nocari was an unsuspecting bidder at a foreclosure sale, "[c]ourts of equity have no power to overrule established law."

---

[2] A subsequent Notice of Lis Pendens was recorded August 16, 2011, which likewise reflects the Pinedas as the owners of record.

8

<u>Orr v. Trask</u>, 464 So. 2d 131, 135 (Fla. 1985) (citing <u>Flagler v. Flagler</u>, 94 So. 2d 592, 594 (Fla. 1957)).  On this record, there simply is no mechanism by which Nocari could recoup the surplus, and thus the trial court erred in finding otherwise.

## III.  Conclusion

We reverse and remand with directions that Nocari deposit the surplus funds back into the court registry, and for proceedings consistent herewith.