DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**CITY OF HALLANDALE BEACH,**
Appellant,

v.

**SUSANA SHAMES,** et al.,
Appellees.

No. 4D2025-1230

[June 3, 2026]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Gary M. Farmer, Jr., Judge; L.T. Case No. 062011CA018533AXXXCE.

Jennifer Merino, City Attorney, and Maxine Karl Streeter, Assistant City Attorney, City of Hallandale Beach, for appellant.

Benjamin Haynes of Haynes Law Group, P.A., Longwood, for appellee Susana Shames.

GROSS, J.

This case involves a dispute over the disposition of $261,738.61 in surplus funds following the foreclosure sale of a five-unit apartment building (the "Property") in Hallandale Beach, Florida. The City of Hallandale Beach says it was entitled to receive the entire amount because it recorded more than $1 million in code violation liens after an initial final judgment of foreclosure. The circuit court decided that the City could recover only $671.01 attributable to a utilities lien recorded prior to the filing of the foreclosure complaint.

We affirm the circuit court's ruling. As to the code violation assessments recorded after the $671.01 utilities lien, the City was not a "subordinate lienholder" within the meaning of section 45.032(1)(b), Florida Statutes (2024), so it was not entitled to file a claim against the surplus for those liens.

***Background Facts***

In August 2011, Branch Banking and Trust Company (the "Bank") filed a foreclosure petition against appellee Susana Shames ("Shames") and her late spouse, Moises Shames, the record owners of the Property. The foreclosure petition named the City as a defendant on the ground that the City "may claim to have some right or interest" in the Property arising out of "a LIEN recorded in Official Records Book 47359 Page 474" of the Broward County public records. This lien was for water/sewer/garbage services and totaled $671.01.

On the same day the Bank filed its foreclosure action, it recorded a notice of lis pendens on the Property.

The City's answer admitted "the allegations of the Complaint as it pertains to the subject property," but asserted that "if there are proceeds from the sale remaining after satisfying the debt owed to the [Bank], then the Court should order the City's liens satisfied with such proceeds." When the City filed this answer, the $671.01 utilities lien was the only lien that the City had recorded against the Property.

In 2012, the circuit court entered the original final judgment of foreclosure. In the years that followed, Shames filed multiple suggestions of bankruptcy and motions to cancel the foreclosure sale. An initial foreclosure sale occurred in 2017 but was vacated later that year.

In August 2024, an amended final judgment was entered, and the Property was sold at a public sale for $950,100. The amended final judgment contained paragraphs stating that (1) on the filing of a certificate of sale, "all persons claiming under or against defendant(s) since the filing of the Notice of Lis Pendens shall be foreclosed of all estate or claim in the property" and (2) [a]ny person claiming an interest in the surplus from the sale, if any, other than the property owner as of the date of the lis pendens, must file a claim before the clerk reports the surplus as unclaimed." *See* § 45.031, Fla. Stat. (2024).

Soon after the foreclosure sale, the clerk filed a Certificate of Disbursements reflecting a $261,738.16 surplus.

### *The Fight Over the Surplus*

In September 2024, Shames moved for release of the surplus funds.

Later that month, the City filed its notice of claim for surplus and moved for an evidentiary hearing, alleging that $1,712,200 in code violation liens remained unpaid and were attached to the Property. These code violation

2

liens were recorded between 2014 and 2023, after the filing of the lis pendens and the entry of the original final judgment.  The City requested that the circuit court enter an order directing the clerk to disburse the entire surplus to the City.

Shames objected to the City's claim for surplus, arguing that the City was entitled to recover only the $671.01 lien.  Shames asserted that "[t]his is the only lien to have been shown as an encumbrance on the property [on] the face of the pleadings."  Shames noted that the pleadings did not "include the City's subsequent code enforcement liens that were recorded after the date of the filing of lis pendens in this instant action."

The City later filed an affidavit of indebtedness, attaching all code violation liens recorded against the Property in the public records.

### The Trial Court's Disbursement Order

Following a hearing, the trial court entered an order disbursing surplus funds, limiting the City's claim for surplus funds to the $671.01 original lien for which the City was named as a subordinate lienholder in the Bank's complaint.

The court denied the City's claim for surplus funds as to the code enforcement violations occurring "after the date of the recording of the lis pendens in this action."

### The City's Arguments on Appeal

The City argues that the trial court "erred by limiting the City's claim for surplus funds to the lien filed and recorded before the lis pendens and specifically identified in the pleadings."  The City contends that the plain text of section 45.032, Florida Statutes (2024), is clear and unambiguous and mandates payment of surplus funds to subordinate lienholders that file a timely claim.  The City maintains that the trial court improperly "took the requirement to qualify as a subordinate lienholder in paragraph (1)(b) and grafted it onto paragraph (2) as a limitation on claims."

### Statutory Procedure for Disbursement of Surplus Funds After a Foreclosure Sale

Section 45.032, Florida Statutes (2024), governs the disbursement of surplus funds after a judicial foreclosure sale.  As the Third District has explained, the "distribution of surplus foreclosure proceeds is governed by a plain and unambiguous statutory procedure . . . ." *Pineda v. Wells Fargo*

*Bank, N.A.*, 143 So. 3d 1008, 1011 (Fla. 3d DCA 2014). "Where the legislature has provided such a process, courts are not free to deviate from that process absent express authority." *Id.*; *accord Nat'l Equity Recovery Servs., Inc. v. Imperial Fund Tr. 2019-I*, 361 So. 3d 876, 880 (Fla. 4th DCA 2023); *Corey v. Unknown Heirs by Neuffer*, 301 So. 3d 380, 383–84 (Fla. 2d DCA 2020).

Section 45.032(1)(b) defines a "subordinate lienholder" as "the holder of a subordinate lien shown on the face of the pleadings as an encumbrance on the property." § 45.032(1)(b), Fla. Stat. (2024). Section 45.032(1)(b) goes on to say that "[a] subordinate lienholder includes, but is not limited to, a subordinate mortgage, judgment, tax warrant, assessment lien, or construction lien."[1] *Id.*

Under section 45.032(2), "[t]here is established a rebuttable legal presumption that the owner of record on the date of the filing of a lis pendens is the person entitled to surplus funds after payment of subordinate lienholders who have timely filed a claim." § 45.032(2), Fla. Stat. (2024).

The "owner of record" is defined as "the person or persons who appear to be owners of the property that is the subject of the foreclosure proceeding on the date of the filing of the lis pendens." § 45.032(1)(a), Fla. Stat. (2024).

Claims by subordinate lienholders are also referenced in section 45.031, which requires the final judgment to include the following language:

> IF THIS PROPERTY IS SOLD AT PUBLIC AUCTION, THERE MAY BE ADDITIONAL MONEY FROM THE SALE AFTER PAYMENT OF PERSONS WHO ARE ENTITLED TO BE PAID FROM THE SALE PROCEEDS PURSUANT TO THIS FINAL JUDGMENT.
>
> IF YOU ARE A SUBORDINATE LIENHOLDER CLAIMING A RIGHT TO FUNDS REMAINING AFTER THE SALE, IF ANY, YOU MUST FILE A CLAIM WITH THE CLERK NO LATER THAN

---

[1] By contrast, the term "subordinate lienholder" does not include a superior lienholder. "Because senior lienors' rights are unaffected by foreclosure, holders of liens which are senior in priority have no right to share in a surplus produced by the foreclosure of a junior mortgage." *Garcia v. Stewart*, 906 So. 2d 1117, 1121 (Fla. 4th DCA 2005).

THE DATE THAT THE CLERK REPORTS THE FUNDS AS
UNCLAIMED. IF YOU FAIL TO FILE A TIMELY CLAIM, YOU
WILL NOT BE ENTITLED TO ANY REMAINING FUNDS.

§ 45.031(1)(a), Fla. Stat. (2024).

Case law establishes that a junior lienholder "has priority over the property holder for foreclosure surplus funds." *Golindano v. Wells Fargo Bank*, 913 So. 2d 614, 615 (Fla. 3d DCA 2005). "Surplus money arising from a sale of land under a decree of foreclosure stands in the place of the land itself in respect to liens thereon or vested rights therein." *Rosen v. Dorn-Kothe, Inc.*, 171 So. 646, 648 (Fla. 1936) (internal quotation marks omitted). Thus, "only after the liens have been satisfied may any surplus be disbursed to the owner of the equity of redemption." *Gen. Bank, F.S.B. v. Westbrooke Pointe, Inc.*, 548 So. 2d 736, 736 (Fla. 3d DCA 1989).

In other words, "[t]he lien of the junior mortgage is not extinguished in the foreclosure but is instead transferred from the property to the fund that stands in the place of the property." *Household Fin. Servs., Inc. v. Bank of Am., N.A.*, 883 So. 2d 346, 348 (Fla. 4th DCA 2004). In *Household Finance*, we held that "a junior mortgagee, joined as a defendant in a foreclosure action and against whom a default has been entered, may later claim entitlement to the surplus funds remaining after a foreclosure sale." *Id.* at 347.

Distributions of surplus funds are not made based on vague notions of fairness, but according to the procedure set forth in sections 45.031(1) and 45.032. For example, a trial court may not disburse "surplus proceeds from a foreclosure sale to the buyer to use to satisfy subordinate lienholders who were not parties to the foreclosure action." *Rodriguez v. Fed. Nat'l Mortg. Ass'n*, 220 So. 3d 577, 577 (Fla. 5th DCA 2017). As the Fifth District explained: "The notice of lis pendens recorded in this case reflects that the Rodriguezes owned the subject property. No subordinate lienholders were shown on the face of the complaint." *Id.* at 578. Because the buyer was not an "owner of record," an assignee of the owner, or a "subordinate lienholder," the buyer "was not entitled to benefit from the surplus funds." *Id.* Rather, "the application of the statute is clear—the owner of record at the time of the recording of the lis pendens is entitled to any surplus proceeds." *Id.*

Even if a subordinate lienholder is a party to the foreclosure action who asserted a claim to surplus funds in a pleading, the subordinate lienholder must still timely file a claim with the clerk after a foreclosure sale to preserve its claim to the surplus. *See Mathews v. Branch Banking & Tr.*

5

*Co.*, 139 So. 3d 498, 500 (Fla. 2d DCA 2014). In *Mathews*, the Second District held that a subordinate lienholder's "answer and affirmative defense" to a foreclosure complaint did not satisfy the "requirement that the party file a claim with the clerk after the sale of the property." *Id.*

### *This Case*

We are required to construe the language in sections 45.031 and 45.032. "In interpreting a statute, our task is to give effect to the words that the legislature has employed in the statutory text." *Lab'y Corp. of Am. v. Davis*, 339 So. 3d 318, 323 (Fla. 2022). "The words of a governing text are of paramount concern, and what they convey, in their context, is what the text means." *Ham v. Portfolio Recovery Assocs., LLC*, 308 So. 3d 942, 946 (Fla. 2020) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 56 (2012)). "Under the whole-text canon, proper interpretation requires consideration of the entire text, in view of its structure and of the physical and logical relation of its many parts." *Davis*, 339 So. 3d at 324 (internal quotation marks omitted).

The trial court correctly limited the City's entitlement to surplus funds solely to the original $671.01 lien referenced in the pleadings. Section 45.032(1)(b) defines "subordinate lienholder" as "the holder of *a subordinate lien shown on the face of the pleadings* as an encumbrance on the property." § 45.032(1)(b), Fla. Stat. (2024) (emphasis added). The City meets the definition of a "subordinate lienholder" only as to the single $671.01 lien identified in the foreclosure complaint in 2011 and admitted in the City's answer; that lien appears "on the face" of both pleadings within the meaning of the statute. The City does not fall under the definition of a "subordinate lienholder" as to the $1,712,200 in code enforcement liens recorded between 2014 and 2023, which were unrelated to the original utilities lien filed prior to the notice of lis pendens. The City is attempting to bootstrap a single pleaded subordinate lien into a claim for surplus funds based on subsequent, post-judgment liens not shown on the face of the pleadings.

Under the whole-text canon, the reference to "claim" in subsection 48.032(2), which grants priority over surplus funds to "subordinate lienholders who have timely filed a claim," must be read together with the definitional limitation of a "subordinate lienholder" set forth in subsection (1)(b). Thus, a "claim" under subsection (2) can mean only a claim asserted by a subordinate lienholder in their capacity as "a holder of a subordinate lien shown on the face of the pleadings as an encumbrance on the property." *See* §§ 48.032(1)(b), (2), Fla. Stat. (2024). Put simply, the term "claim" in subsection (2) necessarily refers to a subordinate lienholder's

claim for surplus funds with respect to a subordinate lien shown on the face of the pleadings. *See id.* Because the City's subsequently-recorded code enforcement liens do not appear on the face of the pleadings, the City is not a "subordinate lienholder" with respect to its claim for $1,712,200 in code violations that were not identified in the pleadings as an encumbrance on the property.

The City's reliance on cases like *Mathews* and *Household Finance* is misplaced because those cases merely establish that a subordinate lienholder's claim for surplus funds must be timely made after the foreclosure sale, irrespective of whether any claim for such was made in the responsive pleading. Those cases addressed procedural issues concerning when a claim for surplus funds needed to be asserted, not the substantive issue of whether a foreclosure defendant named as a subordinate lienholder could assert a claim to surplus funds based on after-acquired liens not shown on the face of the pleadings.

The City also argues that section 48.23, Florida Statutes—the lis pendens statute—does not bar its claims because it is a party to the foreclosure action. But this argument ignores that the disbursement of surplus funds is governed by section 45.032, which limits the statutory definition of a "subordinate lienholder" to "the holder of a subordinate lien shown on the face of the pleadings as an encumbrance on the property." § 45.032(1)(b), Fla. Stat. (2024).

The City had other options available to preserve its ability to receive the surplus funds during the pendency of the lengthy foreclosure process. The inability to qualify as a "subordinate lienholder" under section 45.032 as to the code enforcement liens would not have precluded the City from pursuing other collection remedies, but those options are not now before us. *See, e.g.,* § 162.09, Fla. Stat. (2024). The City chose not to do so, opting instead to rely on the strategy of bootstrapping the subsequently-recorded liens onto the initial lien referenced in the pleadings. Although we agree that this strategy may have been a cleaner and more efficient process to secure the surplus proceeds, it did not comply with the language of the statute.

*Affirmed.*

KLINGENSMITH, J., concurs.
MAY, J., dissents with opinion.

MAY, J., dissenting.

7

I disagree with the majority's reading of the pertinent statute and therefore dissent from the majority's decision. The issue here is whether a subordinate lienholder in a foreclosure action is limited to liens in existence when the foreclosure complaint and lis pendens are filed when making a claim against surplus funds from the foreclosure sale. By its decision, the majority answers the question in the affirmative. I disagree because nothing in section 45.032(1)(b) dictates that result. Rather, subsection (3) defines "who" a subordinate lienholder is. It's as simple as that.

Section 45.032(1)(b) defines a subordinate lienholder as: "the holder of a subordinate lien shown on the face of the pleadings as an encumbrance on the property." § 43.032(3)(b), Fla. Stat. (2012). It is important to note that section 45.032(3) defines "who" is a subordinate lienholder. The statute does NOT define "what" or "how much" the subordinate lienholder may claim against surplus funds after the foreclosure sale.

The face of the foreclosure complaint alleged in paragraph 11 that:

> Defendant, HALLANDALE BEACH CITY, may claim to have some right or interest in the subject real property arising out of, **including but not limited to**, a LIEN recorded in Official Records Book 47359 Page 474 of the Public Records of BROWARD County, Florida. However, any right or interest of said Defendant is subject to and inferior to the right and interest of Plaintiff.

(Emphasis added). And, in fact, at the time the bank filed the foreclosure petition, the City of Hallandale Beach ("City") had recorded a $671.01 lien on page 474 of the Broward County Public Records.

The City answered the foreclosure complaint and asserted "that if there are proceeds from the sale remaining after satisfying the debt owed to the Plaintiff, then the Court should order the City's **liens** satisfied with such proceeds." (Emphasis added). The City did not limit its request to liens in existence at that time.

Indeed, the final foreclosure judgment entered in 2012 included the following language:

> IF YOU ARE A SUBORDINATE LIENHOLDER CLAIMING A RIGHT TO FUNDS REMAINING AFTER THE SALE, YOU MUST FILE A CLAIM WITH THE CLERK NO LATER THAN 60 DAYS

AFTER THE SALE. IF YOU FAIL TO FILE A CLAIM, YOU WILL NOT BE ENTITLED TO ANY REMAINING FUNDS.

That notice also failed to limit the subordinate lienholder to an existing lien.

For the next thirteen years, the property owner managed to delay the property's sale, filing numerous motions and nine suggestions of bankruptcy. An initial foreclosure sale took place in 2017. At that time, the City filed a $2,842.37 claim, based on then-existing liens, against the surplus funds, an amount greater than the lien identified in the foreclosure complaint, reflecting additional liens recorded after the foreclosure judgment. The trial court vacated that foreclosure sale.

Fast forward to 2023, the bank moved to amend the final foreclosure judgment to include additional expenses incurred since entry of the final foreclosure judgment. The trial court granted the motion and amended the final judgment to include additional expenses incurred by the bank. A second foreclosure sale took place in August 2024. By that time, the City had recorded more liens that accrued during the twelve years the property owner managed to delay the property's foreclosure sale.

The City, a subordinate lienholder as defined by section 45.032(3), as "shown on the face of the pleadings," filed a claim against the surplus funds, as it was entitled to do. But, the trial court, and now this Court, restricts the City to the amount of the recorded lien in existence when the foreclosure petition was filed, notwithstanding that twelve years had elapsed and subsequent liens had been properly recorded.

The majority reads into section 45.032(1)(b) a "limitation on the amount" a subordinate lienholder may claim on surplus funds. But I can find no such monetary limitation in the statute's plain wording. All the statute requires is that the subordinate lienholder be shown on the face of the pleadings. Tellingly, the foreclosure petition's allegations recognized that the City as subordinate lienholder possessed a recorded lien, but also recognized the City was not limited to the identified recorded lien ("including but not limited to").

Section 162.09(3), Florida Statutes, provides for the recording of a certified copy of an order imposing a fine and further provides that it "constitute[s] a lien against the land on which the violation exists. . . ." Section 695.01(3) provides that:

9

[a] lien by a governmental entity or quasi-governmental entity that attaches to real property for an improvement, service, fine, or penalty, other than a lien for taxes, non-ad valorem or special assessments, or utilities, is valid and effectual in law or equity against creditors or subsequent purchasers for a valuable consideration only if the lien is recorded in the official records of the county in which the property is located.

§ 695.01(3), Fla. Stat. (2024).  The City duly recorded its liens both before the foreclosure petition was filed and after the foreclosure judgment was entered.

The City could not record liens until they accrued and could not place a claim against surplus funds until the sale took place.  The City's ability to place a claim against the surplus funds did not occur for twelve long years following the judgment, during which additional liens were duly recorded.  As Judge Warner wrote in *Household Finance Services, Inc. v. Bank of America, N.A.,* 883 So. 2d 346, 348 (Fla. 4th DCA 2004):

In determining who is entitled to surplus funds in a mortgage foreclosure, the general rule is that all encumbrances on mortgaged premises inferior to the mortgage on which the sale is based must be paid in order of time in which they respectively became liens, unless some equitable right demands a different order of payment. . . . The lien of the junior mortgage is not extinguished in the foreclosure but is instead transferred from the property to the fund that stands in the place of the property.

(Citation modified).  Here, the City's liens should be paid in the order in which they became recorded liens, notwithstanding that they accrued between the foreclosure judgment and the sale.

The majority cannot point to a case or statute other than its restrictive reading of section 45.032(1)(b) that confines the City's claim to surplus funds to the liens that existed at the time the bank filed its foreclosure petition and lis pendens.[2]  In the absence of such authority, I see no reason to limit the City's ability to claim the amount of its accrued liens in

---

[2] It makes no sense to limit the City to the $671.01 utility lien in existence at the time of the foreclosure.  The utility liens had all been resolved by the time the property was sold.  The recorded code enforcement liens remained outstanding.  And availability of other options for the City doesn't negate its ability to place a claim on surplus funds.

existence at the time of the sale, especially since they accrued while the property owner used every option available to delay the foreclosure sale for twelve years.

Bottom line: section 45.032(1)(b) defines "who" a subordinate lienholder is but does not define "what" that subordinate lienholder may claim against surplus funds.

I therefore dissent and would reverse.

*    *    *

***Not final until disposition of timely-filed motion for rehearing.***