ACCEPTED
04-14-00579-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
7/2/2015 5:44:45 PM
KEITH HOTTLE
CLERK

04-14-00579-CV

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
07/2/2015 5:44:45 PM
KEITH E. HOTTLE
Clerk

IN THE COURT OF APPEALS

FOR THE

FOURTH COURT OF APPEALS DISTRICT OF TEXAS

JAY KAY BEAR LTD.,
APPELLANT/CROSS-APPELLEE,

—VERSUS—

PATTY MARTIN,
APPELLEE/CROSS-APPELLANT.

**REPLY BRIEF OF APPELLANT
JAY KAY BEAR LTD.**

PHIL WATKINS
STATE BAR NO. 20927400
PHIL@PHILWATKINS.COM
PHIL WATKINS, P.C.
926 CHULIE DRIVE
SAN ANTONIO, TEXAS 78216
(210) 225-6666–PHONE
(210) 225-2300–FAX

BETH WATKINS
STATE BAR NO. 24037675
BETH.WATKINS@WATKINSAPPEALS.COM
SHANNON K. DUNN
STATE BAR NO. 24074162
SHANNON.DUNN@WATKINSAPPEALS.COM
LAW OFFICE OF BETH WATKINS
926 CHULIE DRIVE
SAN ANTONIO, TEXAS 78216
(210) 225-6666–PHONE
(210) 225-2300–FAX

ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xiii

ARGUMENT AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.  THIS COURT SHOULD REJECT MARTIN'S STANDING ARGUMENTS BECAUSE THE TRIAL COURT'S LIEN PRIORITY FINDING IMPAIRS JAY KAY BEAR'S RIGHTS IN THE 8.09 ACRES, INCLUDING ITS RIGHT TO TRANSFER THAT PROPERTY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. MARTIN'S PRESERVATION OF ERROR ARGUMENTS ARE MISPLACED . . . . . 2

A.  Jay Kay Bear Was Not Required To Preserve The Error It Complains About On Appeal By Filing A Post-Trial Motion . . . . . 2

B.  Even Though Not Required To Preserve Error, Jay Kay Bear Timely Raised Its Appellate Arguments Through A Series Of Post-Trial Motions Including A Motion For New Trial . . . . . . . . . . 4

III. MARTIN COULD NOT RECEIVE A DECLARATORY JUDGMENT THAT SHE OWNED THE PROPERTY; ONLY A TRESPASS TO TRY TITLE CLAIM CAN GRANT THAT RELIEF, AND MARTIN DID NOT FILE A TRESPASS TO TRY TITLE CLAIM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

A.  The Trial Court Could Not Award Martin Title To The Land In A Declaratory Judgment Action . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

B.  Since The Court Found Against Martin On All Claims That Would Authorize Equitable Subordination, The Trial Court Erred In Awarding Martin Equitable Subordination . . . . . . . . . . . . . . . . 10

C.  Dysart's Report—That Jay Kay Bear Has Lien Priority—Is Evidence To Support Jay Kay Bear's Lien Priority Arguments . . 11

IV. AS A MATTER OF LAW, THE 2003 ZYCO LIEN IS SUPERIOR TO THE JUNE 26, 2008 MARTIN LIEN . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    A.     The Trial Court Found The 2003 Zyco Lien—And Jay Kay Bear's Foreclosure Of That Lien—Valid, So There Was No Need To Reserve The Question Of Priority Of The 2003 Zyco Lien For Another Proceeding . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    B.     Since the 2003 Zyco Lien, Its Transfer To Jay Kay Bear, And Jay Kay Bear's Foreclosure Of It Were Valid, The Trial Court Lacked Any Basis To Award Equitable Subordination . . . . . . . . . . . . . . . 14

    C.     Jay Kay Bear Is Entitled To Lien Priority Under The 2003 Zyco Lien As A Matter Of Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        1.     Zyco's 2003 lien is a purchase money lien that is superior to almost any other liens, including the 2008 Martin lien . . 15

        2.     Since the 2003 Zyco Deed of Trust was recorded before the 2008 Martin Deed of Trust, so between the two, the 2003 Zyco Deed of Trust is the superior lien . . . . . . . . . . . . . . . . 15

        3.     Zyco's transfer of the 2003 Deed of Trust to Jay Kay Bear did not diminish the superiority of that lien . . . . . . . . . . . . 16

        4.     The 2003 Zyco Deed of Trust authorized non-judicial foreclosure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        5.     Neither Zyco nor Jay Kay Bear were required to give Martin notice of the transfer of the 2003 Zyco Deed of Trust or of its foreclosure . . . . . . . . . . . . . . . . . . . . . . . . . 17

        6.     The 2003 Zyco lien was superior to the 2008 Martin lien, so Jay Kay Bear's foreclosure of the 2003 Zyco Deed of Trust extinguished any rights Martin had to the property since her interests arose under a junior lien . . . . . . . . . . . . . 18

7. The interest in the property Martin purchased at the foreclosure sale under the 2008 Martin lien was subject to the 2003 Zyco lien .............................. 20

8. Martin voluntarily contracted away her recourse against BMI ......................................... 21

9. There is no evidence to support the trial court's conclusion that Martin's lien was superior to Jay Kay Bear's lien(s) .. 21

D. Jay Kay Bear's April 6, 2010 Foreclosure Was Valid .......... 23

E. In This Cross-Appeal, This Court Should Render The Judgment The Trial Court Should Have Rendered ................... 26

V. MARTIN'S "MOTION FOR SANCTIONS" IS IMPROPER—SHE DID NOT APPEAL THE RULINGS SHE COMPLAINS ABOUT IN THAT "MOTION," SO THIS COURT LACKS JURISDICTION OVER THOSE COMPLAINTS ........ 28

CONCLUSION ........................................... 29

PRAYER ............................................... 31

CERTIFICATE OF SERVICE ................................. 33

CERTIFICATE OF COMPLIANCE ............................. 34

# INDEX OF AUTHORITIES

**CASES**                                                                             **PAGE**

*Alonso v. Alvarez*, 409 S.W.3d 754 (Tex. App.—San Antonio 2013, pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Bacchus v. Westgate Mgmt.*, 981 S.W.2d 383 (Tex. App.—San Antonio 2998, pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Cantey Hanger, LLP v. Byrd*, No. 13-0861; 2015 Tex. LEXIS 619 (Tex. June 26, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Ceramic Tile Int'l, Inc. v. Balusek*, 137 S.W.3d 722 (Tex. App.—San Antonio 2004, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*City of Keller v. Wilson*, 168 S.W.3d 802 (Tex. 2005) . . . . . . . . . . . . . 21, 26, 27

*City of San Antonio v. Pollock*, 284 S.W.3d 809 (Tex. 2009) . . . . . . . . . . . 25, 26

*Conversion Props., L.L.C. v. Kessler*, 994 S.W.2d 810 (Tex. App.—Dallas 1999, pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Dwairy v. Lopez*, 243 S.W.3d 710 (Tex. App.—San Antonio 2007, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 29

*Farm Credit Bank v. Ogden*, 886 S.W.2d 305 (Tex. App.—Houston [1st Dist.] 1994, no writ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*First Heights Bank, FSB v. Gutierrez*, 852 S.W.2d 596 (Tex. App.—Corpus Christi 1993, writ denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Flag-Redfern Oil Co. v. Humble Expl. Co.*, 744 S.W.2d 6 (Tex. 1987) . . . . . . 22

*Hahn v. Love*, 321 S.W.3d 517 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *26*

*In re Pirelli Tire, L.L.C.*, 247 S.W.3d 670 (Tex. 2007) (orig. proceeding) . 13, 14

*Irving Lumber Co. v. Alltex Mortg. Co.*, 468 S.W.2d 341 (Tex. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 18, 19, 20

*Jones v. Bank United of Tex.*, 51 S.W.3d 3413 (Tex. App.—Houston [1st Dist] 2001, pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Martin v. Amerman*, 133 S.W.3d 262 (Tex. 2004) . . . . . . . . . . . . . . . . . . . . . . 9

*McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787 (Tex. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*McGoodwin v. McGoodwin*, 671 S.W.2d 880 (Tex. 1984) . . . . . . . 15, 18, 19, 22

*McPherson Enters., Inc. v. Producers Coop. Mktg. Assoc., Inc.*, 827 S.W.2d 94 (Tex. App.—Austin 1992, writ denied) . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Melendez v. Citimortgage, Inc.*, 03-14-00029-CV; 2015 WL 3918867 (Tex. App.—Austin June 25, 2015, no pet. h.) (mem. op.) . . . . . . . . . . . . . . . . 16

*Nat'l City Bank v. Tex. Cap. Bank, N.A.*, 353 S.W.2d 581 (Tex. App.—Dallas 2011, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 19, 22

*Nat'l Comm. Bank v. Stiehl*, 866 S.W.2d 706 (Tex. App.—Houston [1st Dist.] 1993, no writ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Nat'l W. Life Ins. Co. v. Ackerman*, 425 S.W.2d 815 (Tex. 1968) . . . . . . . . . . 19

*Office of Pub. Util. Counsel v. Pub. Util. Comm'n*, 878 SW.2d 598 (Tex. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Prize Energy Res., L.P. v. Cliff Hoskins, Inc.*, 345 S.W.3d 537 (Tex. App.—San Antonio 2011, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Torrington Co. v. Stutzman*, 46 S.W.3d 829 (Tex. 2000) . . . . . . . . . . . . . . . . . 1

*Vernor v. SW Fed. Land Bank, Assoc*, 77 S.W.3d 364 (Tex. App.—San Antonio 2002, pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Marks*, 949 S.W.2d 320 (Tex. 1997) . . . . . . . . . . . . . . . . . . . . . 25

*Wingate v. Hajdik,* 795 S.W.2d 717 (Tex. 1990) . . . . . . . . . . . . . . . . . . . . . . . . 3

*World Help v. Leisure Lifestyles, Inc.*, 977 S.W.2d 662 (Tex. App.—Fort Worth 2011, pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## <span style="font-variant: small-caps">Statutes and Rules</span>

Tex. R. App. P. 5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Tex. R. App. P. 33.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 6, 7

Tex. R. App. P. 25.1(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 29

Tex. R. Civ. P. 324(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Tex. Prop. Code Ann. § 13.001 (West 2015) . . . . . . . . . . . . . . . . . . . . . . . . . 15, 22

Tex. Prop. Code Ann. § 13.002 (West 2015) . . . . . . . . . . . . . . . . . . . . . . . . . 7, 22

Tex. Prop. Code Ann. § 22.001(a) (West 2015) . . . . . . . . . . . . . . . . . . . . . . . . 9

Tex. Prop. Code Ann. § 51.0001(4)(C) (West 2015) . . . . . . . . . . . . . . . . . . . . 16

Tex. Prop. Code Ann. § 51.002(b) (West 2015) . . . . . . . . . . . . . . . . . . . . . . . 17

Tex. Prop. Code Ann. § 51.009 (West 2015) . . . . . . . . . . . . . . . . . . . . . 18, 19, 20

## SECONDARY AUTHORITY

Black's Law Dictionary 935 (7th ed. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

17 William V. Dorsaneo III, et al., *Texas Litigation Guide* § 225.03[4][b][i]
    (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

17 William V. Dorsaneo III, et al., *Texas Litigation Guide* § 225.03[6][b]
    (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

5A Aloysius A. Leopold, *Texas Practice Series: Land Titles & Title
    Examination* § 38.4 (3d ed. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15, 17

http://www.txcourts.gov/media/143209/misc-docket-13-9127.pdf (last visited
    June 29, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  29

## ISSUES PRESENTED

I.    Did 2003 occur before 2008?

II.   Did June 25, 2008 occur before June 26, 2008?

III.  Can a trial court can award a plaintiff relief without first finding the defendant liable on a cause of action that authorizes the award of such relief?

## ARGUMENT AND AUTHORITIES

**I.** **THIS COURT SHOULD REJECT MARTIN'S STANDING ARGUMENTS BECAUSE THE TRIAL COURT'S LIEN PRIORITY FINDING IMPAIRS JAY KAY BEAR'S RIGHTS IN THE 8.09 ACRES, INCLUDING ITS RIGHT TO TRANSFER THAT PROPERTY.**

Appellee Patty Martin contends that Appellant Jay Kay Bear, Ltd. lacks standing to pursue this appeal because—according to documents Matin first produced as attachments to her Appellee's Brief—Jay Kay Bear transferred its interest in the 8.09 acre tract to 281 Property, L.L.C. in 2013. *See* Br. of Appellee at 9-10. Martin's argument is puzzling because she is the plaintiff who initiated this lawsuit; Jay Kay Bear has always been a defendant. 1 CR 1; 2 CR 468. If Martin believed that Jay Kay Bear lacked "any interest in the 8.09 acres," as she now contends, then she should not have sued Jay Kay Bear and asked the trial court for a judgment declaring "the rights, responsibilities or other legal relations of the parties made subject of the real estate and contractual documents made the subject of this suit...." *Compare* Br. of Appellee at 10, *with* 1 CR 381-82.

"[A] party whose own interest is prejudiced by an error has standing to appeal." *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 843 (Tex. 2000). Here, the trial court's May 20, 2014 Modified Final Judgment found that "Patty Martin's lien on the 8.09 acres described in the Deed of Trust dated June 3, 2008... is superior to the Jay Kay

-1-

Bear, Ltd. lien dated June 23, 2008 [sic]...." 2 CR 196. That lien priority finding has consequences. One of the consequences of that finding is that Jay Kay Bear did not have a transferrable interest in the property in 2013 because that interest would have been extinguished by Martin's 2010 foreclosure of her superior lien. Importantly, Martin has not attempted to relieve Jay Kay Bear of this consequences of this finding—an action one would expect if her "standing" arguments were correct.

The trial court's erroneous finding that the June 26, 2008 Martin lien was superior to the "June 23, 2008 [sic]" Jay Kay Bear lien prejudices Jay Kay Bear's interests. *See, e.g., Stutzman*, 46 S.W.3d at 843. That is because, if the trial court's lien priority finding is correct, then Jay Kay lacked an interest in this property that he could have transferred after Martin's February 2, 2010 foreclosure. That finding affects, diminishes, and impairs Jay Kay Bear's ownership interest in this property in 2013. *See id.* That finding therefore prejudices Jay Kay Bear's interests. *See id.* For that reason, Jay Kay Bear has standing to challenge it on appeal regardless of whether it still owns this property. *See id.*

Furthermore, for Martin to recover the property, she must: (1) prove that the June 26, 2008 Martin lien was superior to the "June 23, 2008 [sic]" Jay Kay Bear lien; (2) set aside Jay Kay Bear's April 6, 2010 foreclosure; and (3) set aside Jay Kay Bear's May 9, 2013 transfer of the property, which was recorded on May 14, 2003.

It is nonsensical that Martin could obtain a finding adverse to Jay Kay Bear's interests and then preclude him from appealing that finding—even though she still asks that the finding be used against Jay Kay Bear. For these reasons, Jay Kay Bear is entitled to appellate review of the trial court's conclusion that Martin's June 26, 2008 lien is superior to Jay Kay Bear's "June 23, 2008 [sic]" lien regardless of whether Jay Kay Bear still owns the property. *See id.*

## II.  MARTIN'S PRESERVATION OF ERROR ARGUMENTS ARE MISPLACED.

### A.  Jay Kay Bear Was Not Required To Preserve The Error It Complains About On Appeal By Filing A Post-Trial Motion.

Next, Martin argues that Jay Kay Bear was required to file post-trial motions to preserve its arguments that, as a matter of law, the trial court decided the lien priority question incorrectly. *See* Br. of Appellee at 10-12. The only authority Martin cites for this proposition is the dissenting opinion in *Wingate v. Hajdik. See* Br. of Appellee at 10-11 (citing page 722 of *Wingate* without noting that page 722 is Justice Spears' dissenting opinion). The majority opinion in *Wingate* actually reached the error the Petitioner complained of—error that, according to Justice Spears' dissenting opinion, was not preserved in the trial court by filing a motion for new trial after the bench trial or in the court of appeals. 795 S.W.2d 717, 719-20 (Tex. 1990). Martin cannot provide adequate authority for her argument because there is none.

Jay Kay Bear simply was not required to file post-trial motions to preserve its complaints about the trial court's rulings against it. *See, e.g.,* Tex. R. Civ. P. 324(b). Texas Rule of Civil Procedure 324(b) describes five circumstances in which a motion for new trial is required to preserve error. *See id.* Four of those circumstances apply only to jury trials. *See id.* at 324(b)(2), (3), (4), and (5). Only one of those instances apply to bench trials like this one—a complaint on which evidence must be heard. *See id.* at 324(b)(1). This Court is not required to review evidence before it can decide whether 2003 occurred before 2008, whether June 25, 2006 occurred before June 26, 2008, or whether a trial court can award the plaintiff relief without first finding the defendant liable on *some* cause of action that entitles the plaintiff to that relief. For that reason, this Court should reject Martin's misplaced argument that "Jay Kay Bear's appeal should be <u>dismissed</u> because it failed to properly preserve error on the issues presented." Br. of Appellee at 10 (emphasis added).

**B.      Even Though Not Required To Preserve Error, Jay Kay Bear Timely Raised Its Appellate Arguments Through A Series Of Post-Trial Motions Including A Motion For New Trial.**

Even if Jay Kay Bear was required to preserve this error, it did. *See, e.g.,* Tex. R. App. P. 33.1(a). After the trial concluded, the trial court requested supplemental briefing. 2 CR 256; 2 CR 269. On December 17, 2013, Jay Kay Bear filed its brief on the declaratory judgment issues and the priority of the June 25, 2008 Jay Kay Bear

lien. 2 CR 48-52. Then, the trial court requested briefing about the 2003 Zyco lien. 2 CR 58. On January 23, 2014, Jay Kay Bear filed a brief raising its arguments about the priority of the 2003 Zyco lien. 2 CR 94-99. The trial court implicitly overruled those arguments when it signed a judgment contrary to them. *See, e.g.,* Tex. R. App. P. 33.1(b). Jay Kay Bear therefore preserved the arguments it has presented this Court about the priority—as a matter of law—of the 2003 Zyco lien and the June 25, 2008 Jay Kay Bear lien. *See, e.g.,* Tex. R. App. P. 33.1(a), (d).

After the trial court reviewed the parties bench briefs, it rendered judgment "that Patty Martin's lien was superior to the Jay Kay Bear, Ltd., lien." 2 CR 99. Jay Kay Bear filed a separate motion specifically complaining about that finding. 2 CR 100-17. In that motion, Jay Kay Bear presented the trial court with the arguments it has presented this Court on appeal. 2 CR 100-17. The trial court implicitly overruled those arguments when it signed a judgment contrary to them. *See, e.g.,* Tex. R. App. P. 33.1(b). For that reason, Jay Kay Bear preserved the arguments it has presented this Court about the priority—as a matter of law—of the 2003 Zyco lien and the June 25, 2008 Jay Kay Bear lien. *See, e.g.,* Tex. R. App. P. 33.1(a), (d).

Finally, after the trial court signed its Final Judgment, Jay Kay Bear actually filed a motion for new trial. 2 CR 162-77. In that motion, Jay Kay Bear repeated and re-urged the arguments it raised before, during, and after trial. 2 CR 162-77. That

motion contains detailed arguments—the same arguments Jay Kay Bear has raised on appeal—with citations to authority. 2 CR 162-77. The trial court explicitly overruled Jay Kay Bear's motion for new trial. 2 CR 135. The Final Judgment contains a Mother Hubbard clause. 2 CR 139. The trial court therefore overruled the arguments Jay Kay Bear raised in its motion for new trial. *See* Tex. R. App. P. 33.1(a)(2)(A).

On appeal, Martin complains that Jay Kay Bear failed to preserve the arguments it raised on pages 17 through 36 of its appellate brief. *See* Br. of Appellee at 11-12. As but one example, she argues that Jay Kay Bear failed to file a post-trial motion raising about "the effect of junior lien foreclosures." Br. of Appellee at 11. However, in its motion for new trial, Jay Kay Bear specifically argued, "[w]hen a senior lienholder forecloses on property subject to its lien, all junior lienholders are divested of title to the property and their liens extinguished so that he purchaser at the sale takes free of any junior lienholder claim." 2 CR 165. Jay Kay Bear consistently argued that its foreclosure of the 2003 Zyco lien extinguished Martin's junior lien interest in this property. *See, e.g.,* Tex. R. App. P. 33.1.

As another example, Martin complains that Jay Kay Bear failed to file a post-trial motion to preserve its arguments about "superiority of a lien based on pure notice...." Br. of Appellee at 11. However, in its motion for new trial, Jay Kay Bear argued, "[t]he April 6, 2010 foreclosure cannot be set aside on the grounds that Patty

Martin (and her predecessor in interest) *had no knowledge of the June 23, 2008 lien* because they are charged with constructive knowledge based upon the 2003 Deed of Trust being of public record since October 28, 2003." 2 CR 163 (emphasis in orig.). Jay Kay Bear also argued, "[t]he April 6, 2010 foreclosure cannot be set aside based upon Patty Martin's lack of knowledge in June 2008 because Texas law charges her with such knowledge." 2 CR 165. As authority for those arguments, Jay Kay Bear cited section 13.002 of the Texas Property Code. 2 CR 163, 165. Section 13.002 sets the superiority of a lien based on recording and constructive notice. *See* Tex. Prop. Code Ann. § 13.002 (West 2015). Section 13.002 is authority for Jay Kay Bear's "pure notice" arguments, and Jay Kay Bear raised those arguments in its motion for new trial. 2 CR 163, 165. Jay Kay Bear preserved its pure notice arguments by raising them before, during, and after trial. *See, e.g.,* Tex. R. App. P. 33.1.

Even though Jay Kay Bear was not required to preserve its "matter of law" arguments by filing any post-trial motions, it did so. 2 CR 162-77. Those motions brought to the trial court's attention the arguments Jay Kay Bear has raised on appeal. *See, e.g.,* Tex. R. App. P. 33.1. Therefore, this Court should overrule Martin's complaints that Jay Kay Bear failed to preserve the errors it has raised on appeal.

**III. MARTIN COULD NOT RECEIVE A DECLARATORY JUDGMENT THAT SHE OWNED THE PROPERTY; ONLY A TRESPASS TO TRY TITLE CLAIM CAN GRANT THAT RELIEF, AND MARTIN DID NOT FILE A TRESPASS TO TRY TITLE CLAIM.**

**A.    The Trial Court Could Not Award Martin Title To The Land In A Declaratory Judgment Action.**

In both her Appellee's Brief and her Cross-Appellant's Brief, Martin argues that the trial court properly awarded her lien superiority through her declaratory judgment claim. *See* Br. of Appellee at 12-13; *see also* Br. of Cross-Appellant at 17-20. In her declaratory judgment claim, Martin asked the trial court to determine ownership of the property. 1 CR 367 (Martin's live petition alleging that she "had a valid ownership interest in the properties"); 1 CR 368 (Martin's allegation that Killian "wrongfully and intentionally... claim[ed] he was the rightful owner of the properties."); 1 CR 378 (Martin's allegation that "JAY KAY BEAR wrongfully converted MARTIN's ownership interest at the time of each foreclosure...."); 1 CR 381 (Martin's live petition incorporating her prior allegations into her declaratory judgment claim). Martin asked the trial court for a judgment that would allow her to "recover full and clear title to the 8.09 and 8.11 acres." 1 CR 378. She incorporated that request for "full and clear title to the 8.09" acres into her request for declaratory relief. 1 CR 378; 1 CR 381.

For the reasons described in Jay Kay Bear's Cross-Appellee's Brief, however, a declaratory judgment action is not a proper vehicle to determine ownership of property. *See* Br. of Cross-Appellee at 43-46. In 2004, the Texas Supreme Court held that the trespass-to-try-title statute is the <u>only</u> method of resolving a claim that "necessarily involves the question of title." *Martin v. Amerman*, 133 S.W.3d 262, 267 (Tex. 2004). In *Amerman*, the Court clarified that claims like Martin's that seek to determine title to real property cannot be resolved under the Declaratory Judgment Act. *See id.* at 267 (holding that the trespass-to-try-title statute "is '*the* method for determining title to . . . real property'") (emphasis in original) (quoting Tex. Prop. Code Ann. § 22.001(a) (Vernon 2015)). Here, however, Martin did not file a trespass to try title claim. 1 CR 351-86.

A trespass-to-try-title claim is the <u>only</u> method of resolving a claim that involves the question of title. *See Amerman*, 133 S.W.3d at 267. In the court below, Martin requested title to the property, but she did not file a trespass to try title claim. 1 CR 351-85. Martin now concedes that she did not file a trespass to try title claim, and that a "declaratory judgment is not available to determine title to land." Br. of Appellee at 18. The trial court simply did not have any authority to grant a declaratory judgment awarding Martin title to the property because she did not file a trespass to try title claim. *See Amerman*, 133 S.W.3d at 267.

**B. Since The Court Found Against Martin On All Claims That Would Authorize Equitable Subordination, The Trial Court Erred In Awarding Martin Equitable Subordination.**

Equitable subordination is a remedy, not a cause of action. *See, e.g., World Help v. Leisure Lifestyles, Inc.*, 977 S.W.2d 662, 668 (Tex. App.—Fort Worth 2011, pet. denied). Equitable subordination is not available absent a finding that the party with a superior lien or claim engaged in false or inequitable conduct that conferred an unfair advantage on itself or injured third parties. *See, e.g., Farm Credit Bank v. Ogden*, 886 S.W.2d 305, 313 (Tex. App.—Houston [1st Dist.] 1994, no writ) (equitable subordination not available when senior lienholder did not act inequitably).

Again, Martin was the plaintiff in the underlying suit. 1 CR 1. If she wanted equitable subordination, she had to prove her entitlement to it. *See, e.g., Prize Energy Res., L.P. v. Cliff Hoskins, Inc.*, 345 S.W.3d 537, 568 (Tex. App.—San Antonio 2011, no pet.). To prove her entitlement to equitable subordination, Martin had to prove that Jay Kay Bear, as the senior lien holder under the 2003 Zyco lien and the June 25, 2008 Jay Kay Bear lien, acted inequitably. *See, e.g., Ogden*, 886 S.W.2d at 313. But Martin failed to carry that burden of proof. 2 CR 29 ("Judgment is rendered in favor of John Killian and Jay Kay Bear, Ltd. as to all causes of action asserted by Plaintiff.").

The trial court found against Martin on all claims that would authorize equitable subordination. 2 CR 29; 2 CR 195-98. As a result, the trial court lacked the ability to

grant her a superior lien. *See, e.g., Ogden*, 886 S.W.2d at 313. For that reason, the trial court erred when it granted Martin's requested declaratory relief.

### C. Dysart's Report—That Jay Kay Bear Has Lien Priority—Is Evidence To Support Jay Kay Bear's Lien Priority Arguments.

In her Appellee's Brief, Martin argues:

> [4]Sara Dysart's report is not evidence of Jay Kay Bear's various theories of superiority.

Br. of Appellee at 13, n.4. But Martin provides no authority for this outlandish argument. *See id*. Although Dysart was Jay Kay Bear's retained expert, *Martin actually called Dysart to testify during Martin's case in chief.* 2 RR 145. *Martin offered Dysart's report as an exhibit*—and Dysart's report was actually admitted—*during Martin's case in chief.* 2 RR 154. And most damning to Martin's argument on appeal, <u>during trial, Martin's counsel admitted that Dysart was proffered as an expert on lien priority</u>. 4 RR 6.

4 RR 6. This Court should reject Martin's argument out of hand.

Martin actually questioned Dysart about whether the June 25, 2008 Jay Kay

```
        THE COURT:  What has she been proffered as
an expert on?

        MS. OVIATT:  To review the documents in her
report and to identify the priority of liens.
```

Bear and the 2003 Zyco liens were superior to the June 26, 2008 Martin lien. 3 RR 147 ("And can you explain to the Court your understanding of a lien's priority?"); 3 RR 182-83; 3 RR 185-86; 3 RR 193. Martin actually elicited testimony from Dysart that the June 25, 2008 Jay Kay Bear and the 2003 Zyco liens were superior to the June 26, 2008 Martin lien. 3 RR 147; 3 RR 196 (testifying that the 2003 Zyco lien "was transferred to Jay Kay Bear.... And so when the February foreclosure sale took place, since [the 2003 Zyco] lien was prior in time, [Martin and Jay Kay Bear's February 2, 2010 foreclosure sales] did not foreclose out [the 2003 Zyco] lien, so this lien stayed on the property, and so Jay Kay Bear still had the right foreclose this lien; and the foreclosures on this lien has the effect of removing any interest created by the June 3rd, 2008 Deeds of Trust that were foreclosed on February 2nd, 2010."). Dysart also provided those opinions in her expert report. 11 Am. RR Exh. 6. Contrary to Martin's unfounded argument, Dysart's report—like her testimony—is valid evidence to support Jay Kay Bear's theories of lien priority and superiority[1]. *Compare* 4 RR 6 with 11 Am. RR Exh. 6.

---

[1] In the lien context, "priority" and "superiority" are synonyms. *See, e.g.,* Black's Law Dictionary 935 (7th ed. 1999) (defining "prior lien" as "[a] lien that is superior to one or more other liens on the same property, usu. because it was perfected first. — Also termed *priority lien*.").

## IV. AS A MATTER OF LAW, THE 2003 ZYCO LIEN IS SUPERIOR TO THE JUNE 26, 2008 MARTIN LIEN.

### A. The Trial Court Found The 2003 Zyco Lien—And Jay Kay Bear's Foreclosure Of That Lien—Valid, So There Was No Need To Reserve The Question Of Priority Of The 2003 Zyco Lien For Another Proceeding.

Martin asked the trial court to find that the June 25, 2008 Jay Kay Bear lien was a fraudulent lien. 1 CR 365-67; 1 CR 371-72. Martin also asked the trial court to find that Zyco's transfer of the 2003 Zyco lien to Jay Kay Bear was a fraudulent transfer. 1 CR 365-67; 1 CR 371-72. Additionally, Martin asked the trial court to find that Jay Kay Bear's foreclosure of the June 25, 2008 Jay Kay Bear lien and its foreclosure of the 2003 Zyco lien were fraudulent foreclosures. 1 CR 365-67; 1 CR 371-72. But Martin did not carry her burden of proof on those claims. 2 CR 29. For that reason, the trial court refused to find that Zyco's transfer of the 2003 Zyco lien was a fraudulent transfer, that the June 25, 2008 Jay Kay Bear lien was a fraudulent lien, or that Jay Kay Bear's foreclosures of those liens were fraudulent foreclosures. 2 CR 195-98.

This Court must defer to the trial court's resolution of these contested, credibility matters. *See, e.g., Alonso v. Alvarez*, 409 S.W.3d 754, 757 (Tex. App.—San Antonio 2013, pet. denied). Since no findings of fact or conclusions of law were filed, this Court must uphold the judgment "on any legal theory supported by the record." *In re Pirelli Tire, L.L.C.*, 247 S.W.3d 670, 686 (Tex. 2007) (orig.

-13-

proceeding). Since the June 25, 2008 Jay Kay Bear lien and the 2003 Zyco lien were not fraudulent liens, and since Jay Kay Bear's foreclosures of those liens were not fraudulent foreclosures, the trial court's conclusion—"that title and lien positions (except as set forth above) to the 8.09 acres can be determined (if necessary) at a subsequent proceeding when all potential parties / lien holders (including Zyco) are parties"—is misplaced. 2 CR 196. The only reason Zyco would be a necessary party is if its transfer of the 2003 Zyco lien to Jay Kay Bear was somehow defective. Since the trial court rejected that theory, this Court should reverse the trial court's mistaken conclusion that lien position could not be determined in this litigation, and instead had to be resolved in a subsequent proceeding when Zyco was present. 2 CR 196.

**B.    Since the 2003 Zyco Lien, Its Transfer To Jay Kay Bear, And Jay Kay Bear's Foreclosure Of It Were Valid, The Trial Court Lacked Any Basis To Award Equitable Subordination.**

The 2003 Zyco lien was not created on June 23, 2008 as the trial court erroneously recited. 2 CR 196. Instead, it was created on October 24, 2003, and recorded on October 28, 2003. 11 AM. RR Exh. 6. That is the date its lien priority was established. 3 RR 150. Short of paying off BMI's debt to Zyco, Martin could not do anything to diminish the priority of that lien. *See, e.g., Bacchus v. Westgate Mgmt.*, 981 S.W.2d 383, 385 (Tex. App.—San Antonio 2998, pet. denied).

**C.      Jay Kay Bear Is Entitled To Lien Priority Under The 2003 Zyco Lien As A Matter Of Law.**

      1.     Zyco's 2003 lien is a purchase money lien that is superior to almost any other liens, including the 2008 Martin lien.

With few exceptions not applicable here, purchase money liens are superior to all other liens. *See, e.g., McGoodwin v. McGoodwin*, 671 S.W.2d 880, 882 (Tex. 1984); *Irving Lumber Co. v. Alltex Mortg. Co.*, 468 S.W.2d 341, 343 (Tex. 1971); *see also* 5A Aloysius A. Leopold, *Texas Practice Series: Land Titles & Title Examination* § 38.4 (3d ed. 2014). When Zyco loaned money to BMI in 2003 to buy the 8.09 acres, Zyco obtained a purchase money lien. 11 Am. RR Exh. 6. Zyco obtained its lien on October 24, 2003, and recorded it on October 28, 2003. 11 Am. RR Exh. 6. Since the 2003 Zyco lien secured a purchase money debt, it is superior to non-purchase money liens. *See, e.g., McGoodwin*, 671 S.W.2d at 882.

      2.     Since the 2003 Zyco Deed of Trust was recorded before the 2008 Martin Deed of Trust, so between the two, the 2003 Zyco Deed of Trust is the superior lien.

Texas applies the "first in time is first in right" rule to competing liens. *See* Tex. Prop. Code Ann. § 13.001 (West 2015). Liens generally have priority in the chronological order in which they are recorded, so that a lien that was recorded earlier in time has priority over a lien that was recorded later. *See, e.g., Nat'l City Bank v. Tex. Cap. Bank, N.A.*, 353 S.W.2d 581, 585 (Tex. App.—Dallas 2011, no pet.). For

that reason, the 2003 Zyco lien is superior to any liens that were filed after October 28, 2003. *See id.*

3. Zyco's transfer of the 2003 Deed of Trust to Jay Kay Bear did not diminish the superiority of that lien.

Liens may be assigned freely. *See, e.g.,* Tex. Prop. Code Ann. § 51.0001(4)(C) (West 2015). Transferring a valid lien from one holder to another does not impair or otherwise diminish the priority of that lien. *See, e.g., Melendez v. Citimortgage, Inc.*, 03-14-00029-CV; 2015 WL 3918867 at *4 (Tex. App.—Austin June 25, 2015, no pet. h.) (mem. op.). Martin alleged that Zyco's transfer of its lien to Jay Kay Bear was, *inter alia*, fraudulent. 1 CR 365-81. The trial court disagreed. 2 CR 196. Since the trial court found that Zyco's transfer its lien to Jay Kay Bear was not fraudulent, Zyco's rights under the 2003 Zyco lien were validly transferred to Jay Kay Bear. 2 CR 196. Zyco's transfer of its lien to Jay Kay Bear presented no basis to impair or diminish the priority of the 2003 Zyco lien. 2 CR 196.

4. The 2003 Zyco Deed of Trust authorized non-judicial foreclosure.

If a borrower defaults on payment of a debt secured by a deed of trust, the deed of trust empowers the lender to demand that the trustee sell the mortgaged property. *See* 17 William V. Dorsaneo III, et al., *Texas Litigation Guide* § 225.03[4][b][i] (2006). After a deed of trust foreclosure and sale, all right, title, and interest that the

owner held at the time the deed of trust was executed passes to the purchaser at the foreclosure sale, free and clear of the rights of any subsequent purchaser. *See* 5A *Texas Practice Series: Land Titles & Title Examination* § 38.4.

Here, the 2003 Zyco Deed of Trust authorized the trustee to sell the 8.09 acres at a non-judicial foreclosure. 11 AM. RR Exh. 6. When Zyco transferred its Deed of Trust to Jay Kay Bear, Jay Kay Bear was authorized to non-judicially foreclose and sell the 8.09 acres in the event of BMI's default. 11 RR Exh. 24. Since BMI defaulted on its obligation to repay Zyco—a right that Zyco had assigned to Jay Kay Bear—Jay Kay Bear was entitled to sell the 8.09 acres through a non-judicial foreclosure sale. *See* 5A *Texas Practice Series: Land Titles & Title Examination* § 38.4.

> 5. Neither Zyco nor Jay Kay Bear were required to give Martin notice of the transfer of the 2003 Zyco Deed of Trust or of its foreclosure.

Before foreclosing, the trustee of a deed of trust is required to: (1) post notice at the courthouse door of the county where the property is located; (2) file a copy of the notice with the court clerk in the county where the property is located; and (3) send notice to each debtor who is obligated to pay the debt by certified mail. *See* Tex. Prop. Code Ann. § 51.002(b) (West 2015). There is no requirement that the trustee give notice to persons who are not obligated to pay the debt. *See, e.g., Nat'l Comm. Bank v. Stiehl*, 866 S.W.2d 706, 708 (Tex. App.—Houston [1st Dist.] 1993, no writ).

When a foreclosure sale under a deed of trust occurs, inferior liens are extinguished without the necessity of notice to inferior lienholders unless the deed of trust provides to the contrary. *See Jones v. Bank United of Tex.*, 51 S.W.3d 3413, 344 (Tex. App.—Houston [1st Dist] 2001, pet. denied). When Jay Kay Bear received and later foreclosed on the 2003 Zyco Deed of Trust, it simply was not required to give notice to Martin. 4 RR 32; 11 Am. RR Exh. 6; *see also Stiehl*, 866 S.W.2d at 708.

> 6.  The 2003 Zyco lien was superior to the 2008 Martin lien, so Jay Kay Bear's foreclosure of the 2003 Zyco Deed of Trust extinguished any rights Martin had to the property since her interests arose under a junior lien.

A trustee's sale under a senior deed of trust lien generally cuts off the rights of junior lienholders. *See, e.g., Irving Lumber Co.*, 468 S.W.2d at 344; 3 RR 148. However, foreclosure of a junior deed of trust lien does <u>not</u> cut off the rights of senior lienholders. *See Conversion Props., L.L.C. v. Kessler*, 994 S.W.2d 810, 813 (Tex. App.—Dallas 1999, pet. denied) (buyer at a junior lien foreclosure sale takes title subject to the prior liens); *see also* Tex. Prop. Code § 51.009 (buyer takes property "as is"). Again, as a purchase money lien, the 2003 Zyco lien was a superior lien. 11 Am. RR Exh. 6. The 2008 Martin lien did not secure purchase money, so it is inferior to the 2003 Zyco lien. *See, e.g., McGoodwin*, 671 S.W.2d at 882.

Additionally, the 2003 Zyco Deed of Trust was senior to any other

encumbrances on the property that were created after the 2003 Zyco Deed of Trust was recorded. *See, e.g., Nat'l City Bank*, 353 S.W.3d at 585. The 2008 Martin Deed of Trust filed five years after the 2003 Zyco Deed of Trust was a junior lien. *See id.*; *see also* 11 Am. RR Exh. 6. When Martin foreclosed on the 2008 Martin Deed of Trust, her foreclosure extinguished liens recorded after her Deed of Trust was recorded on June 26, 2008. *See Irving Lumber Co.*, 468 S.W.2d at 344. But her foreclosure did not extinguish any liens recorded prior to that date. *See Kessler*, 994 S.W.2d at 813. And since her lien was not a purchase money lien, her foreclosure did not extinguish any purchase money liens. *See, e.g., McGoodwin*, 671 S.W.2d at 882.

Even assuming *arguendo* that Martin's February 2, 2010 foreclosure of the 2008 Martin Deed of Trust was effective, that foreclosure would not extinguish the rights of the superior lienholder—here, Jay Kay Bear under the 2003 Zyco lien, since that lien secured a purchase money obligation and since that lien was recorded before Martin recorded her lien. *See Nat'l W. Life Ins. Co. v. Ackerman*, 425 S.W.2d 815, 818-19 (Tex. 1968). Regardless of whether the 2008 Martin lien was superior to the 2008 Jay Kay Bear lien or vice versa, whoever bought the 8.09 acres at the February 2, 2010 foreclosure sales bought the property subject to the 2003 Zyco lien. 3 RR 229; 11 Am. RR Exh. 6; *see also Kessler*, 994 S.W.2d at 813; Tex. Prop. Code § 51.009. As a matter of law, Jay Kay Bear's foreclosure under the 2003 Zyco lien wiped out

-19-

any interest Martin had in the property even if she properly foreclosed on February 2, 2010. *See Irving Lumber Co.*, 468 S.W.2d at 344.

> 7. The interest in the property Martin purchased at the foreclosure sale under the 2008 Martin lien was subject to the 2003 Zyco lien.

If, after paying the trustee's fees and the debt on the foreclosed property, the foreclosure sale results in a surplus, that amount is distributed to junior lienholders and then to the record title holder. *See Kessler*, 994 S.W.2d at 813-15. No surplus is distributed to senior lienholders because senior liens remain intact after a junior lien is foreclosed upon. *See id*. That is because foreclosure purchasers buy the property as is, and subject to senior liens. *See id*.; *see also* Tex. Prop. Code § 51.009.

When Martin obtained the 2008 Martin lien from BMI, BMI's interest in the 8.09 acres—the interest it pledged as collateral for repayment of its debt to Martin—was already subject to its obligation to finish paying the purchase price of the property to Zyco. 11 AM. RR Exh. 6. Short of paying BMI's debt to Zyco—an obligation that was pledged as collateral for Zyco's loan from Jay Kay Bear—there was nothing Martin could do to extinguish the 2003 Zyco lien or impair its priority. *See, e.g., Ackerman*, 425 S.W.2d at 818-19. For that reason, foreclosure of Martin's lien under the 2008 Martin lien neither extinguished nor affected the rights contained in the 2003 Zyco lien. *See id*.

8.     Martin voluntarily contracted away her recourse against BMI.

Some notes and deeds of trust provide that foreclosure is the exclusive remedy for default. *See* 17 William V. Dorsaneo III, et al., *Texas Litigation Guide* § 225.03[6][b] (2006). Such non-recourse provisions are valid, and prevent a personal judgment against the debtor for any deficiency between the amount of the loan and the sale price of the property. *See id.* Here, Martin agreed that the note and deed of trust she received from BMI were non-recourse. 11 RR Exh. 2; 12 RR Exh. 2. She agreed to that non-recourse term while she was represented by capable counsel. *See, e.g., Cantey Hanger, LLP v. Byrd*, No. 13-0861; 2015 Tex. LEXIS 619 at *9 (Tex. June 26, 2015) (attorney immunity protects opposing party's lawyer from immunity to non-client even when fraud in the representation is alleged); *see also McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 792-95 (Tex. 1999) (litigant's reliance on opposing party's lawyer's representations is generally not justifiable, especially when litigant is represented by own counsel). Martin—not Jay Kay Bear—is responsible for the consequences of that decision. *See id.*

9.     There is no evidence to support the trial court's conclusion that Martin's lien was superior to Jay Kay Bear's lien(s).

This Court should answer the lien priority questions in this appeal as a matter of law. *See, e.g., City of Keller v. Wilson*, 168 S.W.3d 802, 81 (Tex. 2005). For three

main reasons, the 2003 Zyco lien is superior to the 2008 Martin lien <u>as a matter of law</u>.

First, purchase money liens are superior to almost all other liens. *See, e.g., Flag-Redfern Oil Co. v. Humble Expl. Co.*, 744 S.W.2d 6, 9 (Tex. 1987). The 2003 Zyco lien was a purchase money lien. 11 Am. RR Exh. 6; 3 RR 175. The 2008 Martin lien was not a purchase money lien. 11 Am. RR Exh. 6; 11 RR Exh. 2; 12 RR Exh. 2. Therefore, the 2003 Zyco purchase money lien is superior to the 2008 Martin lien, which did not secure purchase money. *See, e.g., McGoodwin*, 671 S.W.2d at 882.

Second, Texas is a pure notice state, so the first lienholder to file a lien of record has priority over subsequent lienholders. *See* Tex. Prop. Code §§ 13.001, 13.002. Here, the 2003 Zyco lien was recorded on October 28, 2003. 11 Am. RR Exh. 6. The 2003 Zyco lien had priority over all other liens that were recorded after October 28, 2003. *See, e.g., Meyer*, 375 U.S. at 321; *see also Nat'l City Bank*, 353 S.W.3d at 585. The 2008 lien was not recorded until June 26, 2008. 11 Am. RR Exh. 6. As a matter of law, 2003 occurred before 2008.

Third, Zyco's transfer of its lien to Jay Kay Bear in 2008 did not impair or in any way reduce the superiority of the 2003 Zyco lien. The trial court's judgment incorrectly recites that 2008 Martin lien was superior to "the Jay Kay Bear, Ltd. lien dated June 23, 2008 [sic] and recorded at Volume 13559, Page 509, Real Property

Records of Bexar County, Texas." 2 CR 196. Volume 13559, Page 509 of those records contains the Collateral Transfer of Note and Lien, under which Zyco transferred the 2003 Zyco lien to Jay Kay Bear. 11 RR Exh. 24; 11 Am. RR Exh. 6. That transfer occurred on June 23, 2008, but the priority of the 2003 Zyco lien was set long before that date—on October 28, 2003. 11 RR Exh. 24; 11 Am. RR Exh. 6. The trial court was mistaken that the operative date for determining priority of the 2003 Zyco lien was June 23, 2008. As a matter of law, the Zyco lien's priority was set on October 28, 2003—the date the 2003 Zyco Deed of Trust was recorded—not the date it was transferred to Jay Kay Bear. 11 Am. RR Exh. 6. Since the trial court declined to find that Jay Kay Bear had engaged in any tortious behavior that would justify equitable subordination, this Court is prohibited by black-letter lien priority law from giving weight to Martin's argument that, for equitable reasons, the 2008 Martin lien should have priority over the 2003 Zyco lien. *See, e.g., Vernor v. SW Fed. Land Bank, Assoc*, 77 S.W.3d 364, 366 (Tex. App.—San Antonio 2002, pet. denied). Zyco's transfer of its lien to Jay Kay Bear did not impair or otherwise reduce that lien's priority. *See id*.

### D. Jay Kay Bear's April 6, 2010 Foreclosure Was Valid.

Martin argues that the 2003 Zyco Deed of Trust matured one year after it was made, on October 24, 2004. 3 RR 199-200. But Martin presented no evidence to

support that contention. In her Appellee's Brief, she argues:

> At trial, Martin offered evidence that the April 6, 2010 was fraudulent because the time to foreclose on the underlying Note had expired. CR.1:351; RR.3:200.

Br. of Appellee at 16. The only citations to authority she provides are a citation to her live petition—CR.1:351—and a citation to volume 3, page 200 of the reporter's record. *See id.* Of course, pleadings are not evidence. *See, e.g., Ceramic Tile Int'l, Inc. v. Balusek*, 137 S.W.3d 722, 724 (Tex. App.—San Antonio 2004, no pet.). Additionally, the exchange between Dysart and Martin's counsel, which began on volume 3, page 199 of the reporter's record and continued to page 200, absolutely does not show that the time to foreclose on the underlying note had expired. 3 RR 199-200. That exchange, about Jay Kay Bear's February 6, 2010 foreclosure under the 2003 Zyco lien, showed that Dysart had no knowledge about when the 2003 Zyco lien matured:

> Q.   And I think you previously testified you weren't given the Note identified in this Foreclosure Sale Deed to review; is that correct?
>
> A.   That's correct.
>
> Q.   And so, you have no idea when that Note would have matured; is that correct?
>
> A.   That's correct.
>
> Q.   If I represented to you that it matured one year later, October 24th, 2003, at -- it matured one year later, October 24th, 2004, what would be the appropriate time frame for this Note secured by Deed of Trust to be foreclosed upon?
>
> A.   Would you repeat that?
>
> Q.   If the Note matured October 24th, 2004, what was the time frame that a trustee would have to foreclose upon that piece of property?
>
> A.   Well, it would depend on whether the Note was renewed and extended.

3 RR 199-200. The conditional representation by Martin's counsel that the note matured on October 24, 2004 is no evidence that Zyco's time to foreclose on the 2003 Zyco lien had expired. *See, e.g., United States v. Marks*, 949 S.W.2d 320, 326 (Tex. 1997) (attorney's unsworn statements are not evidence); *see also City of San Antonio*

*v. Pollock*, 284 S.W.3d 809, 820 (Tex. 2009). As Dysart testified, "it would depend on whether the Note was renewed and extended." 3 CR 200. Martin's counsel's conditional representation that the note matured one year later is not evidence. *See id*. Martin presented <u>no evidence</u> that "the time to foreclose on the underlying Note had expired." 11 RR Exh. 24. In contrast, Jay Kay Bear presented evidence that most liens do *not* include maturity dates and that an extension of a lien does *not* have to be filed of record. 4 RR 59-60.

As the plaintiff below, Martin had the burden of proving that Zyco's transfer of the 2003 Zyco lien to Jay Kay Bear was a fraudulent transfer in order to set it aside. *See, e.g., Hahn v. Love*, 321 S.W.3d 517, 526 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). The trial court found that she failed to carry that burden of proving a fraudulent transfer. 2 CR 291; 2 CR 195-98. As a matter of law, since the trial court found against Martin on all causes of action that would have authorized her to set aside the transfer or foreclosure of the 2003 Zyco lien, the trial court erred in granting Martin that relief.

**E.    In This Cross-Appeal, This Court Should Render The Judgment The Trial Court Should Have Rendered.**

This Court should answer questions about lien priority as a matter of law. *See, e.g., City of Keller v. Wilson*, 168 S.W.3d 802, 810 (2005) (no-evidence point must

be sustained when there is a complete absence of evidence of a vital fact, when the court is barred by rules of law from giving weight to the only evidence offered to prove a vital fact, when the evidence offered to prove a vital fact is no more than a mere scintilla, and when the evidence conclusively establishes the opposite of a vital fact). As a matter of law, 2003 occurred before 2008. *See, e.g., Office of Pub. Util. Counsel v. Pub. Util. Comm'n*, 878 SW.2d 598, 600 (Tex. 1994) (court can take judicial notice at any stage in the proceeding). Especially since the trial court declined to find that Jay Kay Bear had engaged in any tortious behavior, this Court is prohibited from giving weight to evidence that, for equitable reasons, the 2008 lien should have priority over the 2003 lien. *See, e.g., City of Keller*, 168 S.W.3d at 828. For these reasons, this Court should:

1. reverse the judgment of the trial court that the 2008 Martin Deed of Trust had priority over the 2003 Zyco Deed of Trust;

2. render a judgment that the 2003 Zyco Deed of Trust had priority over the 2008 Martin Deed of Trust; and

3. render a judgment that Jay Kay Bear's April 6, 2010 foreclosure of the 2003 Zyco Deed of Trust extinguished any interest that Martin held in the 8.09 acres as a result of her February 2, 2010 foreclosure of the 2008 Martin Deed of Trust.

*See* Tex. R. App. P. 43.3 (when reversing trial court judgment and remand is not necessary, appellate court must render judgment trial court should have).

**V.      MARTIN'S "MOTION FOR SANCTIONS" IS IMPROPER—SHE DID NOT APPEAL THE RULINGS SHE COMPLAINS ABOUT IN THAT "MOTION," SO THIS COURT LACKS JURISDICTION OVER THOSE COMPLAINTS.**

In her Appellee's Brief, Martin included a "Motion for Sanctions" requesting that "this Court use it's [sic] inherent power to sanction John M. Killian, Jay Kay Bear, and their attorney, Phil Watkins." Br. of Appellee at 27. It is important to note that John M. Killian and Phil Watkins are not parties to Jay Kay Bear's appeal, so it is questionable whether this Court—in Jay Kay Bear's appeal—could even exercise its jurisdiction over them. *Cf. McPherson Enters., Inc. v. Producers Coop. Mktg. Assoc., Inc.*, 827 S.W.2d 94, 97 (Tex. App.—Austin 1992, writ denied). The Austin Court of Appeals has recognized:

> an appellee 'may complain by cross-point in his brief in the court of appeals, without perfecting an independent appeal, of any error in the trial court as between appellant and appellee.' *Donwerth v. Preston II Chrysler Dodge*, 775 S.W.2d 634, 639 (Tex. 1989). However, *Donwerth* does not apply to this case because [Appellee's] points of error are against the [owners of Appellant corporation] as individuals, and they are not parties to this appeal."

*Id.* That is especially true here because Martin did not file a notice of appeal complaining of the trial court's resolution of her sanctions motions below. *Compare* 2 CR 232-75, *with* Tex. R. App. P. 25.1(c) (providing an "appellate court may not grant a party who does not file a notice of appeal more favorable relief than did the trial court except for just cause."), *and Dwairy v. Lopez*, 243 S.W.3d 710, 714 (Tex.

App.—San Antonio 2007, no pet.).

Although Martin did file a notice of appeal, she appealed only the "Modified Final Judgment dated May 20, 2014." 2 CR 225. She did not appeal any orders related to the actions she complains about in her "Motion for Sanctions." *Compare* 2 CR 225, *with* Br. of Appellee at 22-27, *and* Br. of Appellee at App. B, C, D. She also failed to pay the filing fee for that "motion." *See, e.g.,* Tex. R. App. P. 5; *see also* http://www.txcourts.gov/media/143209/misc-docket-13-9127.pdf (last visited June 29, 2015).

Appellate courts can only review trial courts' orders and judgments. *See, e.g.,* Tex. R. App. P. 25.1(c). Here, Martin did not appeal the rulings she complains about in her "Motion for Sanctions." 2 CR 225. For that reason, this Court lacks jurisdiction over Martin's "Motion for Sanctions." *See, e.g., Dwairy*, 243 S.W.3d at 714. This Court should decline Martin's invitation to "use it's [sic] inherent power to sanction John M. Killian, Jay Kay Bear, and their attorney, Phil Watkins."

## CONCLUSION

In her Appellee's Brief, Martin contends that "Killian's signing of the Settlement Agreement on January 24, 2008 is evidence of his actual knowledge of the Martin Lien. It therefore follows he knew of Martin's lien before taking another interest in the 8.09 acres five months later via the JKB/ Zyco lien on June 23, 2008."

Br. of Appellee at 14-15. The problem with Martin's argument is that, in addition to having constructive notice of the 2003 Zyco lien as a result of its filing, and despite her lawyers' obligation to know about the existence of prior liens when they negotiated lien priority with BMI and Dullye, <u>Martin actually knew of the 2003 Zyco lien when she created the Martin lien on June 26, 2008</u>. 11 RR Exh. 4; 11 Am. RR Exh. 6; 11 RR Exh. 10; 11 RR Exh. 23; 11 RR Exh. 24. Equitable subordination simply should not apply to circumstances like these where any injury Martin suffered was were self-inflicted. *First Heights Bank, FSB v. Gutierrez*, 852 S.W.2d 596, 605 (Tex. App.—Corpus Christi 1993, writ denied).

In the unlikely event this Court does not agree with Jay Kay Bear, and instead concludes that the 2008 Martin Deed of Trust has priority over the 2003 Zyco Deed of Trust, then title to the 8.09 acres remains vested in Jay Kay Bear based upon its foreclosure of the 2008 Jay Kay Bear Deed of Trust that was filed of public record on June 25, 2008—one day before Martin filed the 2008 Martin Deed of Trust on June 26, 2008. The filing dates of these deeds of trust are undisputed, and as a matter of law, the April 6, 2010 foreclosure of the 2003 Zyco Deed of Trust foreclosed out any interest Jay Kay Bear or Martin had under their 2008 deeds of trust. Even if this Court concludes that the trial court was somehow correct to arbitrarily subordinate the 2003 Zyco Deed of Trust to the 2008 Martin Deed of Trust, then this Court should still find,

as a matter of law, that the 2008 Jay Kay Bear Deed of Trust—which was filed on June 25, 2008—is superior to the 2008 Martin Deed of Trust—which was filed on June 26, 2008.

## PRAYER

For the foregoing reasons, Appellant Jay Kay Bear, Ltd. respectfully requests that this Court:

- reverse the judgment of the trial court that the 2008 Martin Deed of Trust had priority over the 2003 Zyco Deed of Trust;

- render a judgment that the 2003 Zyco Deed of Trust had priority over the 2008 Martin Deed of Trust;

- render a judgment that Jay Kay Bear's April 6, 2010 foreclosure of the 2003 Zyco Deed of Trust extinguished any interest that Martin held in the 8.09 acres as a result of her February 2, 2010 foreclosure of the 2008 Martin Deed of Trust; and

- decline to rule on Martin's "Motion for Sanctions."

Alternatively, Jay Kay Bear requests that this Court render a judgment that:

- Jay Kay Bear's foreclosure of the June 25, 2008 Jay Kay Bear Deed of Trust foreclosed out any interest that Martin held under the June 26, 2008 Martin Deed of Trust.

In the further alternative, Jay Kay Bear respectfully requests that this Court remand the cause to the trial court for a determination of whether the June 25, 2008 Jay Kay Bear Deed of Trust has lien priority over the June 26, 2008 Martin Deed of Trust. If

this Court rejects Jay Kay Bear's arguments for reformation of the portion of the trial court's judgment relating to the 8.09 acres, then remand would be necessary because the trial court's conclusion that the 2008 Martin Deed of Trust has lien priority over the 2003 Zyco Deed of Trust does not answer the questions the parties asked the trial court about who has title to the property.

Jay Kay Bear further respectfully requests that this Court issue a judgment authorizing it to recover its costs of this appeal from Martin, as well as all such other and further relief to which it may be entitled, at law or in equity.

Respectfully submitted,

  /s/ *Beth Watkins*
Beth Watkins
Texas Bar No. 24037675
Shannon K. Dunn
Texas Bar No. 24074162
LAW OFFICE OF BETH WATKINS
926 Chulie Drive
San Antonio, Texas 78216
(210) 225-6666– phone
(210) 225-2300– fax

ATTORNEYS FOR APPELLANT
JAY KAY BEAR, LTD.

**CERTIFICATE OF SERVICE**

I hereby certify that on July 2, 2015, a true and correct copy of this brief was forwarded in accordance with rule 9.5 of the Texas Rules of Appellate Procedure to the following counsel of record:

Ms. Patricia Oviatt
COKINOS, BOSIEN & YOUNG
10999 IH 10 West, Suite 800
San Antonio, Texas 78230
Poviatt@cbylaw.com

/s/ *Beth Watkins*
Beth Watkins
ATTORNEY FOR APPELLANT
JK BEAR LTD.

## CERTIFICATE OF COMPLIANCE

Pursuant to Tex. R. App. P. 9.4(i)(3), undersigned counsel certifies that this brief complies with the type-volume limitations of Tex. R. App. P. 9.4(i)(2).

1. Exclusive of the portions exempted by Tex. R. App. P. 9.4(i)(1), this brief contains 7,461 words printed in a proportionally spaced typeface.

2. This brief is printed in a proportionally spaced, serif typeface using Times New Roman 14 point font in text and Times New Roman 12 point font in footnotes produced by Corel WordPerfect X6 software and converted to PDF format by Acrobat Distiller 10.1.3.

/s/ *Beth Watkins*
BETH WATKINS

ATTORNEY FOR APPELLANT